Opinion filed April 2, 2009 











 
 
  
 
 







 
 
  
 
 




Opinion filed April 2,
2009 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00201-CR

                                                    __________

 

                             PATRICK MICHAEL OBRIEN, Appellant

 

                                                             V.

 

                                         STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 410th District Court

                                                    Montgomery
County, Texas

                                          Trial
Court Cause No. 07-02-01418-CR

 



 

                                              M E
M O R A N D U M   O P I N I O N

The
jury convicted Patrick Michael Obrien[1] of four
offenses of aggravated sexual assault of a child, two offenses of sexual
assault of a child, four offenses of indecency with a child by contact, and two
offenses of indecency with a child by exposure.  The jury assessed his
punishment at confinement for sixty years for two of the aggravated sexual
assault offenses, fifty years for the remaining aggravated sexual assault
offenses, fifteen years for each of the sexual assault offenses, fifteen years
for each of the indecency by contact offenses, and seven years for both
indecency by exposure offenses.  For each of the twelve offenses, the jury
assessed a fine of $10,000.  We affirm.








The
victims were appellant=s
daughter, his stepson, and his son.  Count Nos. One through Four addressed 2005
offenses against his then nine-year-old daughter.   Count Nos. Five through
Eight involved 2001 and 2002 offenses against his stepson who was thirteen and
fourteen.  Count Nos. Nine through Twelve concerned the 1999 and 2000 offenses
against his son who was twelve and thirteen. 

In
his first seventeen points of error, appellant challenges the sufficiency of
the evidence to support his conviction for each offense.  In his eighteenth
point, appellant contends that his conviction for indecency with his daughter
by exposure is barred by the doctrine of double jeopardy because of  the jury=s verdict of guilty of
aggravated sexual assault of his daughter and two offenses of indecency by
contact with his daughter.  In his final point, appellant contends that double
jeopardy also bars his conviction of sexual assault by contact of his stepson
because of the jury=s
verdict of guilty of the sexual assault by penetration of his stepson.

In
order to determine if the evidence is legally sufficient, the appellate court
must review all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex.
Crim. App. 2000). 

To determine if
the evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.








The
appellate court reviews the factfinder=s
weighing of the evidence and cannot substitute its judgment for that of the
factfinder.  Cain, 958 S.W.2d at 407; Clewis, 922 S.W.2d at 133. 
Due deference must be given to the factfinder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson, 23 S.W.3d at 9; Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996).  The jury, as the finder of fact, is the sole
judge of the weight and credibility of the witnesses= testimony.  Tex.
Code Crim. Proc.
Ann. art. 36.13 (Vernon 2007),
art. 38.04 (Vernon 1979); Jones, 944 S.W.2d at 647.  An appellate court
has the authority to disagree with the factfinder=s
determination Aonly
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.

Appellant=s first six points address
the sufficiency of the evidence to support his convictions for the offenses
against his daughter.  The jury convicted appellant of the aggravated sexual
assault of his daughter by placing his sexual organ in his daughter=s mouth, of indecency with
his daughter by touching her genitals, of indecency with his daughter by having
her touch his genitals, and of indecency with his daughter by showing his
genitals to her.  Appellant contends that the evidence is factually
insufficient to support his convictions for the aggravated sexual assault and
the indecency by having his daughter touch him charges because the only direct
evidence was his daughter=s
testimony, because he denied the incident occurred, and because his daughter=s mother (his ex-wife) had
a motive to fabricate her testimony.  Appellant challenges the legal and
factual sufficiency of the evidence to support his convictions for indecency by
touching his daughter=s
genitals because he contends that there is no evidence he actually touched his
daughter=s genitals;
that the evidence established that, at the most, he placed his hand on top of
his daughter=s hand to
show her how to touch herself; and that, at best, any intent was to arouse or
gratify his daughter=s
sexual desires and not his own.  Appellant argues that the evidence is legally
and factually insufficient to support his conviction for exposing his genitals
because exposure is included in the other three offenses and because conviction
of indecency by exposure violates his double jeopardy protections.  This
argument is also the basis for his eighteenth point.

 The
daughter testified that she was eleven years old and in the fifth grade at the
time of the trial.  She described how, when she lived on Shady Oaks, appellant
would show her movies of A[w]omen
and boys having sex@
and of naked women Aposing.@  She stated that having
sex meant where a Aboy
pushes his private part into a girl=s@ private.  She remembered
one of the movies was named AThe
Housekeeper@ and was
about a maid having sex with a male.  Sometimes, appellant and his son would
watch the movies with her.  Both appellant and his son would be Aplaying with theirselves@ during the movie.  She
described how sometimes appellant and his son would play Aindividually@ and sometimes Athey would do it together.@  When it was just
appellant and her, she would A[p]lay
with [appellant].@








Appellant
also showed her pictures on his computer in files labeled APuffies@ and AReds.@  She stated that Apuffies@ meant a Apuffy nipple@ on naked women.  AReds@ were naked redheaded women Aposing.@  Appellant told her not to
tell her mother.

At
his office, appellant took her hand and rubbed it on her private.  He told her
that that was her Apussy@ and  that she Ashould rub@ her Aclick@ because Ait felt good.@  She could not remember if
appellant=s hand
actually touched her private, but she remembered that her privates were only
rubbed because appellant=s
hand was on top of her hand and moving her hand.  She repeatedly testified that
appellant Ashowed@ her and that he Ajust rubbed@ her.  Sometimes, she moved
her hand up and down on appellant=s
private part.  Appellant told her that that was his Adick.@ 
His daughter testified that, while she was moving her hand, A[w]hite stuff@ came out of the Ahole@ on Athe
top@ of his private part. 
The Awhite stuff@ went everywhere, and
appellant had to clean it up with a paper towel.  He told his daughter that the
Awhite stuff@ was called Acum.@  He told her to lick and suck on his private
part.  She did, but nothing came out.  Appellant also pulled his pants down,
put his hands on his private part, and did Aan
up and down motion.@

Most
of the time that she was with appellant, they would sleep together.  They had
slept in bed together after appellant touched himself and after she put her
mouth on his private part.  She testified that she did not remember which type
of touching occurred first and that she was seven or eight when this behavior
started.

Appellant=s daughter testified that
he had told her to keep this a secret.  She did not tell for awhile because she
did not want appellant to be mad at her.  Finally, she had a Avery sick stomach@ and Ajust couldn=t keep it inside@ anymore.  Before she told
her mother, she tried to call appellant to be sure it was okay with him to tell
because she did not want him to be mad.

His
daughter further testified that she loved appellant, that she was upset her
parents had divorced, and that she wanted them to be a family.  She liked going
to appellant=s home,
missed appellant, and was not mad at him.  She stated that appellant had never
put anything inside of her sexual organ.  His son would sometimes lick the
cheek part of her bottom.  Both appellant and his son would kiss her by putting
their tongues in her mouth.








She
testified that appellant told her not to tell her mother because her mother
would put him  in jail.  She Athought
[that] it was normal@
and that Aeverybody
did it.@  As she got
older, she started getting a funny feeling in her stomach and decided to call
appellant to see if it would be okay to tell.  When she called him, no one
answered the phone.

Cheryl
Lynn Obrien testified that she had been married to appellant but that they were
divorced and that the victim was her daughter.  On June 12, 2005, Cheryl had
been watching a program about sexual abuse and about strangers inappropriately
touching children.  She had talked Avery
vaguely@ to her
daughter about Abeing
touched@ before.  That
day while she was taking a bath and her daughter was lying on the bathroom
floor reading a book, Cheryl talked to her daughter again, told her that it was
wrong, and asked her daughter to always tell her if that ever happened.  Her
daughter left the bathroom for a Acouple
of minutes.@  When she
returned, she told Cheryl that she had to tell her something and that Cheryl
could not get mad.  Her daughter told her that appellant had showed her
pictures of naked people posing and having sex, that sometimes she touched
appellant, and that appellant had touched her Adown
there.@  While her
daughter showed Cheryl how she had touched appellant by moving her hand up and
down, her daughter was crying.  Her daughter also said that sometimes she used
her mouth instead of her hand.  Her daughter asked Cheryl not to hate her and
explained that she had never told because appellant had said that Cheryl would
put him in jail.  Cheryl described how her daughter told what channel they had
watched the movies on and how appellant had Arubbed
her down in her privates.@ 
Her daughter used the words Aplaying
with@ to describe masturbation. 
Cheryl stated that she called the police after talking with her daughter.

Appellant
testified that his divorce from Cheryl had not been amicable and that there had
been a lot of questions about money.  Appellant stated that he had never touched
his daughter in any way for sexual gratification.  He further stated that he
had never done anything sexually inappropriate with his daughter and that he
had never exposed himself to her.  He denied any sort of sexual activity with
any of the three children.  Appellant also denied any knowledge of a movie
called AThe
Housekeeper@ and
testified that he never had files called AReds@ or APuffies@
on his computer.








When
all of the evidence is viewed in a light most favorable to the verdict, we find
that the evidence is legally sufficient to support the jury=s decision that appellant
committed the offenses of  indecency with his daughter by touching her genitals
and by exposing his genitals.  His daughter testified that appellant would Aplay@ with himself while they watched movies
together, that he had pulled his pants down and showed her his Aprivate parts,@ and that he had showed her
how to rub his Adick.@  She also testified that
appellant had taken her hand in his hand and rubbed her private part.  Cheryl
testified that appellant=s
daughter described how appellant had rubbed her Adown
there.@  A rational
jury could have found beyond a reasonable doubt that appellant used his hand to
teach his ten-year-old daughter how to masturbate and that he did so for his
own sexual arousal and gratification.  His daughter testified concerning
multiple instances of touching and masturbation.  A rational jury could have
found beyond a reasonable doubt that appellant exposed his genitals to his
daughter at various times.

 As
a factfinder, the jury balanced not only appellant=s testimony but also his demeanor when he
denied any possible sexual misconduct and described his concerns about his
former wife=s motives
and his daughter=s
lying about the sexual activities between them and between him and his stepson
with appellant=s
daughter=s testimony
and demeanor.  The jury concluded that the evidence established beyond a
reasonable doubt that appellant had exposed his genitals to his daughter, had
his daughter put her mouth on his penis, had touched his daughter=s sexual organ, and had his
daughter touch his penis.  When all of the evidence is viewed in a neutral
light, we find that the evidence supporting the verdicts concerning the four
offenses against appellant=s
daughter is not so weak that the verdicts are clearly wrong and manifestly
unjust and that the verdicts are not against the great weight and preponderance
of the conflicting evidence. The evidence is factually sufficient to support
appellant=s
convictions for the offenses alleged in Count Nos. One through Four.  All of
appellant=s challenges
to the sufficiency of the evidence to support his convictions for offenses
against his daughter are overruled.








In
his next six points, appellant challenges the sufficiency of the evidence to
support his convictions for committing the four offenses against his stepson. 
The jury convicted appellant of two offenses of indecency by contact by having
his stepson touch appellant=s
genitals (Count Nos. Five and Six).  The jury also convicted appellant of the
sexual assaults of his stepson by penetrating his stepson=s mouth with his sexual
organ (Count No. Seven) and by causing his stepson=s mouth to contact his sexual organ (Count No.
Eight).  The sexual assault offenses were not aggravated offenses because his
stepson was fourteen at the time.  Tex.
Penal Code Ann. '
22.011(c)(1) (Vernon Supp. 2008).  Appellant contends that the evidence is
factually insufficient to support both indecency convictions because the only
direct evidence was his stepson=s
testimony and because Cheryl testified that she had never observed anything
that would suggest or support that inappropriate sexual activity was occurring
between appellant and his stepson.  Appellant challenges both the legal and
factual sufficiency of the evidence to support the sexual assault offenses
because the only direct evidence was the stepson=s
testimony.  Appellant contends that a rational jury could not have found
penetration based on his stepson=s
testimony concerning Aoral
pleasure.@

Appellant=s stepson testified that he
was nineteen at the time of trial.  The stepson described how he enjoyed being
around appellant, how for Aa
long time@ appellant Awas [his] dad,@ and how they were Aalmost a perfect family
except for maybe a couple of little arguments here and there over school or
something like that.@ 
When they were living in a house on Powell Street, appellant showed his stepson
Asexual pictures@ on the computer.  The
stepson described the pictures as a Aman
and a woman having intercourse.@ 
That same week, appellant showed him a Apornographic
video.@  The video
showed men and women having sex as well as women having sex with each other. 
Appellant took the video out of a Alittle
cabinet in the stairwell@
that had a padlock on it.  While there was one key to the cabinet, appellant
showed him how to open the lock with a steak knife.  His mother did not know
about the videos, and they only watched them when she was gone.

Appellant,
his son, and his stepson would watch the videos together.  Appellant and his
son would have shirts on but no pants.  First, they would masturbate
themselves.  Then, appellant would masturbate his son.  The first time his
stepson saw this, no one touched him.  Later, when he was watching a video with
appellant, appellant reached over and masturbated his stepson until his stepson
ejaculated.  The stepson also masturbated appellant.  The next day, appellant=s son was trying to find
the pictures on the computer when appellant came over, found the pictures, and
gave his son Aoral
pleasure.@  His son
masturbated both appellant and appellant=s
stepson while the stepson masturbated appellant and appellant=s son.

Later,
when the three were masturbating while watching the computer, appellant put his
mouth on his stepson=s
penis and gave him Aoral
pleasure for awhile.@ 
Then, appellant told his stepson to do the same to him.  Appellant told both
boys that it was his Afatherly
duty to teach [them] about sex@
and Ato show [them]
this type of stuff@
and that they should not tell Cheryl because she would get really mad.  His
stepson testified that he Afigured
it, you know, the father must show the kid this because, you know, [he]
guess[ed] it would teach the kid later in life.@








Appellant=s stepson remembered one
specific incident when the three had gone fishing.  Either appellant=s son or stepson said that
they Awere horny,@ and appellant pulled the
boat into Aa little
cove thing.@  The
three masturbated and gave each other oral pleasure.  Appellant asked his
stepson if Ahe could
go anal.@  His stepson
answered no because Ait
just didn=t feel
right.@

His
stepson moved out right before he started high school.  He was Areally good friends@ with appellant=s son, and he would go and
spend the night with him and appellant.  Appellant=s stepson testified that the mutual
masturbation and oral pleasure continued between the three and that he had been
Aconvinced that it was
[appellant=s] duty to
show [him] these things, that [appellant] was teaching [him] stuff that [he]
guess[ed] he could use later in life so [he] wouldn=t be embarrassed because [he] didn=t know.@  The sexual activity
stopped when the stepson quit going over to appellant=s home sometime in late 2004 or early 2005.

Appellant=s stepson testified that he
was aware that an adult Awith
like a five[-]year[-]old kid or a ten-year[-]old kid@ was Aextremely
wrong.@  But since he
was not Aforced into
it,@ he thought what
appellant, appellant=s
son, and he were doing was not wrong.  He testified that he Afigured  what happened to
[him] was wrong@ when
he saw how people reacted when his little sister told what appellant had done
to her.  Appellant=s
stepson stated that he was embarrassed, figured he would Alet it go because it was
the past,@ and did not
mention appellant=s
sexual activity with him.  Later, he told the district attorney=s office because he felt
that they had heard about Athis
stuff before.@

Appellant=s stepson further testified
that he never saw anything happen between appellant and appellant=s daughter.  However,
sometimes pornographic videos would still be in the VCR, or pornographic
pictures would be saved on the computer where his daughter could Ajust open@ the file,  and a bottle of
personal lubricant would be out on the computer desk.  His stepson had watched
appellant use personal lubricant, and once, appellant had provided him with
some.

 Appellant=s stepson testified that,
while he did not hate appellant, he had a Astrong
dislike for what has happened with the events@
and that he Akind of
[felt] sorry for [appellant].@ 
He was upset at first that appellant and his mother were divorcing because
appellant had made his mother happy and because appellant was his dad.  He
stated that he thought it would be Akind
of [a] far stretch@
for his family to get back together now.

Appellant
testified that his stepson was lying and that he had never done any of the
activities his stepson testified about.








Appellant=s son testified using the
term Aoral sex@ to describe some of the
sexual activity between appellant and his stepson, between appellant and
himself, and between appellant=s
stepson and himself.  His son also testified that the three performed oral sex
on each other during the  fishing trip.

When
all the evidence is viewed in the light most favorable to the verdict, the
evidence is legally sufficient to support the jury=s findings that appellant committed the
offenses of sexual assault with his stepson.  Likewise, when viewed in a
neutral light, the evidence is factually sufficient to support the convictions
for indecency and sexual assault.  A rational jury could have determined that
by Aoral pleasure@ appellant=s stepson was referring to
oral sex and to the penetration of mouths by sexual organs.  The evidence
supporting the verdicts concerning the four offenses against appellant=s stepson is not so weak
that the verdicts are clearly wrong and manifestly unjust, and the verdicts are
not against the great weight and preponderance of the conflicting evidence. 
These points are overruled.

In
his next five points, appellant challenges the sufficiency of the evidence to
support his convictions for the four offenses against his son.  The jury found
appellant guilty of exposing his genitals to his son (Count No. Nine)  and of
aggravated sexually assaulting his son by penetrating his son=s mouth with his sexual
organ (Count No. Ten), by contacting his son=s
mouth or penetrating his son=s
mouth with his sexual organ (Count No. Eleven), and by having his son penetrate
appellant=s anus with
his son=s sexual organ
(Count No. Twelve).  The sexual assault offenses were aggravated offenses
because his son was alleged to have been younger than fourteen.  Tex. Penal Code Ann. ' 22.021(a)(2)(B) (Vernon
Supp. 2008).  Appellant contends that the evidence is factually insufficient to
support the conviction for exposure because his son=s testimony was the only direct testimony of
the exposure.  Appellant challenges the factual sufficiency of the aggravated
sexual assaults in Count Nos. Ten and Eleven on the grounds that there is
insufficient evidence of penetration and to establish the age of his son.  He
contends that the final aggravated sexual assault conviction was both legally
and factually insufficient to show that his son was under the age of fourteen.








Appellant=s son testified that he did
not see appellant during the first nine years of his life.  When he was nine
and living at a halfway house in San Antonio, appellant came to meet him.  When
he was ten years old and in the fifth grade, he moved in with appellant,
Cheryl, appellant=s
daughter, and appellant=s
stepson.  They lived on Powell Street.  His son stated that this was a Astruggling period@ for him.  He had been on
Ritalin for hyperactivity, Depricote for depression, and zolpidem as a sleep
aid; and he was not Aexactly
the best kid [he] could have been in school.@ 
He described Cheryl as an AOCD
clean freak@ and
stated that that caused a strain.  Overall, he stated that the living
conditions were constructive and that the situation was working.  Cheryl was
strict in a Agood
motherly values@ way. 
During his sixth grade year, appellant began tapering off his son=s medication.

Appellant=s son testified that,
during the six or seven years he lived in the Powell Street house, appellant
touched him in inappropriate ways.  He thought that he had been in the fifth or
sixth grade when the touching started.  One night when he could not sleep, he walked
into the living room while appellant was watching internet porn on the
television.  He was curious and asked appellant questions.  The pictures were a
Arandom set of male on
female, anal, vaginal sex, lesbians.@ 
Appellant=s son stated
that Athat night, [he]
was taught how to masturbate with [his] hand.@ 
His son stated that he had trouble with dates, that he thought this occurred in
the summer of 1998, and that he was twelve or thirteen at the time.

His
son testified that Ait
led from there to oral sex between [him] and [appellant=s stepson] and [appellant].@  Sometimes, the boys would
Ado it@ in front of appellant. 
Sometimes, they would Ado
it@ when they were by
themselves.  When appellant masturbated in front of his son, he exposed his
genitals to his son.

Appellant=s son testified that the
next thing that Ahappened@ to him that Awas different@ was that he had anal sex
with appellant.  One time, he was in trouble and had to stand in the corner on
his toes.  After he had been standing there awhile, appellant came into the
room and said that Asometimes
he would do things when he was younger just because he wanted to do something
to his father.@ 
Appellant asked his son if that was the case.   His son stated that he Aused [this] as an  excuse
to get out@ of the
corner.  They went back to the computer room and Agot
naked.@  A
masturbation session began, and appellant also put his own finger into his own
anus.  Appellant then asked his son Awhat
is it that [he] would like to do to [appellant].@ 
His son answered that he Areally
hadn=t wanted anything
to do with [appellant]@
but that he Ajust
wanted to feel what a woman was like.@ 
Appellant put lubricant on Ahis
butthole,@ and they Aproceeded to have anal sex.@  Appellant asked his son
to perform anal sex on him, but appellant did not perform anal sex on his son.








Appellant=s son described how
appellant would masturbate and ejaculate in front of him.  Sometimes, appellant
would use lubricant on his anus and on his finger.  His son testified that,
when he was younger than fourteen, appellant had put his sexual organ inside
his son=s mouth, and
he had put his sexual organ inside of appellant=s
mouth.  Appellant=s
son also described how appellant=s
daughter had Ajacked
[him] off once,@ how
he had touched her genitals, and how he had licked the cheeks of her butt. 
When his son told appellant about this activity, appellant told his son that he
was not upset and that it Awas
going to be okay.@

On
cross-examination, appellant=s
son testified that he was not sure if he was thirteen or fourteen when the anal
sex occurred after he had been standing in the corner.  Around the time that he
was fifteen, appellant=s
son decided that he was not going into appellant=s
office Aanymore for
the purposes of masturbation.@ 
Appellant=s son
remembered the oral sex in the water but had no Arecollection@ of appellant attempting
anal sex with his stepson.

On
redirect, appellant=s
son testified that appellant had offered to pay for counseling if he would
testify that nothing had happened between them.  His son stated that he Ahem hawed@ because he loved appellant
very much and because he would not be the kind of person he was if appellant
had not come into his life.  He remembered that he moved to Powell Street in
August 1998 and that he moved from Powell Street during Christmas of his
sophomore year in high school.

Cheryl
testified that appellant=s
son moved in with the family in 1998 when they lived on Powell Street.  The
record reflects that appellant=s
son and stepson would have both been ten years old and his daughter would have
been two years old.  They left the Powell Street house in the spring of 2004. 
Cheryl=s divorce from
appellant was final in 2005.

Appellant
denied any sexual misconduct with his son.  He stated repeatedly that his son
as well as his daughter and stepson were lying.  Appellant testified that he
did ask his son to testify on his behalf but that he never asked his son to say
that nothing happened between them Abecause
nothing did happen.@








After
applying the applicable standards of review, we find that a rational jury could
have found all of the elements of each offense.  As the sole finder of fact,
the jury was the sole judge of the weight and the credibility of the witnesses= testimony.  Articles
36.13, 38.04; Jones, 944 S.W.2d at 647.  When viewed in the light most
favorable to the verdict, the evidence is legally sufficient to support the
convictions for sexual assault of his son when his son was under the age of
fourteen.  When viewed in a neutral light, the evidence supporting the verdicts
concerning the four offenses against appellant=s
son is not so weak that the verdicts are clearly wrong and manifestly unjust. 
Further, the verdicts are not against the great weight and preponderance of the
conflicting evidence.  These points are
overruled.

 In his final two points, appellant contends
that his conviction for exposing his genitals to his daughter (Count No. Four)
and conviction for sexually assaulting his stepson by causing his stepson=s mouth to contact
appellant=s sexual
organ (Count No. Eight) are barred by double jeopardy based on his convictions
of indecency by contact and aggravated sexual assault of his daughter (Count
Nos. One through Three) and sexual assault by penetration with his stepson
(Count No. Seven).  Appellant contends that exposure of his genitals would
be lesser included offenses of indecency by contact and sexual assault because
neither indecency by contact nor sexual assault could possibly occur without
the necessary exposure of genitals.  Appellant also contends that, on the
occasions where his daughter stated that she saw him masturbate, there was no
evidence that, when he exposed himself for this activity, he was aware that she
was present.  As to the offense against his stepson, appellant argues that his
conviction for penetrating his stepson=s
mouth precludes his conviction for contacting his stepson=s mouth with his sexual
organ because contact would necessarily have occurred prior to penetration. 
Therefore, appellant concludes that his convictions for indecency by exposure
with his daughter and sexual assault of his stepson by contact result in multiple
prosecutions and punishments for the same offenses.








While
appellant correctly contends that a conviction cannot be maintained for both an
attempt to commit an offense and the completion of the identical offense,
appellant appears to be attempting to limit the evidence of the sexual activity
to only three instances with his daughter (Count Nos. One through Three) and
three instances with his stepson (Count Nos. Seven, Nine, and Ten).  He ignores
his daughter=s
testimony that appellant would pull his pants down and show her his genitals
when they would watch movies together and that appellant would sometimes
masturbate in front of her while they watched movies or looked at pictures.  He
ignores her testimony that this was a repeated course of action and was not
limited to three isolated instances.  He, likewise, ignores his stepson=s testimony that mutual Aoral pleasure@ continued between
appellant, his son, and his stepson because appellant had convinced him that
this activity was what fathers taught their sons so that the sons would not be
embarrassed later on in life by their lack of sexual knowledge.  Again,
appellant attempts to limit the evidence to only one instance of oral sex
between him and his stepson.  He also reasserts his argument of what a rational
jury could infer from his stepson=s
testimony of Aoral
pleasure@ while
ignoring his son=s
description of the activity as Aoral
sex.@

The
record does not support appellant=s
characterizations of the evidence.  The record does support the jury=s convictions for indecency
by exposure with his daughter and sexual assault by contact with his stepson. 
The record reflects that the jury=s
verdicts were for separate offenses and were not multiple convictions and
punishments for the same offenses.  The doctrine of double jeopardy is not
invoked and is not applicable.  See Littrell v. State, 271 S.W.3d 273
(Tex. Crim. App. 2008).  The final two points are overruled.

Through
his appellate attorney, appellant has filed a motion seeking the withdrawal of
his court-appointed counsel so that he might represent himself on appeal.  This
motion was filed after the case had been fully briefed and the appeal was
submitted to this court.  Appellant=s
request is neither timely nor appropriate at this stage of the proceedings.  Hubbard
v. State, 739 S.W.2d 341 (Tex. Crim. App. 1987).  The motion is overruled.

We
note that, while court-appointed counsel is not required to file a petition for
discretionary review, counsel is required to advise appellant not only of the
result of this direct appeal but also of the availability of discretionary
review.  Ex parte Webb, 270 S.W.3d 108, 109 n.4 (Tex. Crim. App. 2008); Ex
parte Wilson, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997).

All
of appellant=s
contentions on appeal have been considered, and each is overruled.  The
judgments of the trial court are affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

April 2, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We note that appellant=s
last name is spelled AObrien@ in the clerk=s record and spelled AO=Brien@ in the reporter=s record.